J-S14016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| S.M.M. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| D.M.M. | : | No. 3336 EDA 2018 | |

Appeal from the Order Entered October 19, 2018
In the Court of Common Pleas of Lehigh County Domestic Relations at
No(s): 2017-FC-1214

BEFORE: LAZARUS, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED MAY 08, 2019**

S.M.M. (Mother) appeals from the order denying the petition for modification filed by Mother and granting the petition for modification filed by D.M.M. (Father). The order directed shared legal custody of A.R.M., born in November 2008, and B.C.M., born in December 2010 (collectively, the Children), and awarded Father primary physical custody and Mother partial physical custody. We affirm.

The trial court summarized the relevant procedural and factual history as follows:

> Mother is Plaintiff, . . .who resides in Allentown, Lehigh County[, PA]. She is thirty-five years old. Father is Defendant, . . . , age forty-six, who has continuously lived at the marital residence in Birdsboro, Berks County, PA. Mother and Father are husband and wife. In 2006, at age twenty-three, Mother moved to Father's residence; they married [in June 2009] and continued to reside at

_____

[*] Retired Senior Judge assigned to the Superior Court.

the Birdsboro address. . . . [Mother and Father] separated on June 10, 2012.[1] Mother moved with the Children to the home of her parents . . . [in] Allentown, Lehigh County. . . .

Mother immediately filed a Complaint for Custody on August 12, 2012 [in] Berks County. Mother sought shared legal and primary physical custody of the Children. She filed a Petition for Special Relief on August 22, 2012 in which she alleged that Father would not release the Children's personal items and furniture to her. Father answered and counterclaimed to which Mother responded. On January 18, 2013, Mother was awarded primary custody and Father was granted alternating weekends [] by the Honorable James M. Bucci. In addition, the court ordered a custody evaluation to be performed by Dr. Peter H. Thomas, within ten days; the costs to be shared by the parties. Mother filed objections to the Order on September 3, 2013, requesting, among other things, to add others to assist with transportation; this was granted on September 30, 2013.

Although the pleadings before the [c]ourt were filed in 2017, the facts relevant to the pleadings began in 2016 with the filing of a protection from abuse petition against Mother on behalf of the Children on March 4, 2016 by Father. A Temporary Protection From Abuse Order was granted, superseding the custody order, for Father against Mother on behalf of the parties['] two minor children as a result of domestic violence occurrences on February 26 and 27, 2016 between Mother and [J.S.], Mother's paramour. . . .

The Affidavit of Probable Cause to the Complaint filed by Det/Sgt. Tim Cooper #326 of the City of Bethlehem Police against [J.S.] . . . indicates that on February 27, 2016, the City of Bethlehem Police Communications Center received a 911 call transfer from the Lehigh County Communications Center, in which Mother could be heard stating "Don't hurt me, Don't hurt me." The address provided was [Mother's address in Bethlehem]. Upon arrival at the residence, City of Bethlehem Patrol Officers made contact with Mother, the 911 caller. Mother told the responding officers that her boyfriend, [J.S.,] had assaulted her several times over the past two days. Mother had a swollen right eye that was nearly shut and several red marks on her face and neck. Mother told the

---

[1] While separated, Mother and Father remained married at the time of the hearing. N.T., 3/26/18, at 11.

officers that on February 26, 2016 at 7:00 [a.m.], [J.S.] confronted her about the car keys as she tried to take her children to school, punched her in the face several times, and then began to choke her around the neck with both hands. Mother stated that on February 27, 2016, at 2:00 [a.m.], [J.S.] entered her bedroom and began asking her about the car keys. Mother told [J.S.] the keys were under the pillow, but when he lifted the pillow, they were not there. [J.S.] became enraged, even though Mother said the keys must have fallen on the floor. [J.S.] told Mother that he "loved her" but was going to "kill her." He bound Mother's hands behind her back with packing tape and wrapped the tape around Mother's face and mouth. After five or ten minutes, [J.S.] removed the tape and Mother ran in to the bathroom and locked the door. [J.S.] smashed his way into the bathroom door, pushed Mother's head to the floor, and began pouring Xanax into Mother's mouth, in an effort to make her swallow the pills to make it "look like suicide." Mother got out of the bathroom and went back in the bedroom. Mother heard the neighbors and warned [J.S.] that the neighbors would call the police. Thereafter, [J.S.] fled. [Local newspaper headlines referenced the incident.] The article requested the public's help in locating [J.S.], described as 5 foot ten inches and weighing 200 pounds, on charges of aggravated assault, simple assault, terroristic threats, reckless endangerment and unlawful restraint; it also indicated that[,] according to police, the [C]hildren were present in the residence [at the time of the incident].

Father learned of these events six days later. On the afternoon of March 1, 2016, Father repeatedly sent text messages to Mother regarding the whereabouts and safety of the Children. She responded to him the next day, indicated that the Children were fine, but she did not reveal their location. In the March 2, 2016 text exchanges, Mother described the police as "manipulative lying dicks, [t]hey are being dicks to me, [t]he cops stole my phone and made shit up, and the cops [are] not here to protect anyone and [the] kids know that."

On March 8, 2016, Father filed a Petition for Emergency Relief in the Berks County action. Mother had moved from her parent's home in Lehigh County to Northampton County . . . with [J.S.] in 2013. Father alleged that there were multiple incidents of domestic violence at Mother's home. . . . On March 14, 2016, at a hearing in Berks County on said Petition [sic] transferred the custody matter to Northampton County, finding that the Children had resided there for more than six months. . . . The Honorable

Jennifer R. Sletvold of Northampton County dismissed Father's Petition for Protection from Abuse. By amended Order on March 24, 2016[,] she granted the parties a shared custody schedule, with a 2/2/3 schedule. Mother's custody was to be supervised by her parents . . . and contingent upon her residence at their home in Allentown. The Children were ordered to have no contact with any of Mother's boyfriends, including [J.S.].

On April 1, 2016, Father filed another Emergency Petition for Special Relief. Father, having found that the older child had missed thirty-three days of school and was late [for] twenty-seven days of school, transferred the [c]hild from Lehigh Valley Academy to Owatin Creek Elementary School located near Father's residence. At that time[,] Mother was unemployed and did not have a valid driver's license. His Petition was denied; the Honorable Emil Giordano returned the circumstance to the status quo and ordered the [c]hild to attend Kratzer Elementary School and not to miss any days of school.

Custody litigation continued. On April 20, 2016[,] an Interim Order was entered by agreement of the parties to share legal custody, primary physical custody to Mother, and Father exercising eight out of ten weekends, 5 [p.m.] Friday until 5 [p.m.] Sunday with the exchange at Kutztown Police Station. In addition, the parties were to submit to co-parent counseling to be conducted by Dr. Ronald Esteve and to proceed to trial in July 2016. On July 8, 2016[,] another Order of Court by agreement was entered confirming the prior terms, however, amending Father's weekends to the first three of each month with Father to pick up the Children at school and drop off at Mother's home.

The criminal charges related to Mother's assault were resolved on August 26, 2016; [J.S.] pled guilty to summary harassment. Mother attended the proceedings and testified that the injury to her right eye was self-inflicted and that she had taken Xanax, under the belief that it was another medication. Mother testified that she had an adverse reaction to the Xanax, hallucinated, and could not recall giving a statement to the police on February 27, 2016. Mother testified that the Xanax was not forced down her throat and that she was never bound with packing tape. Mother further testified that she agreed with the guilty plea and that she wanted to continue to have a relationship with [J.S.]. Contrary to the March 24, 2016 Order, she and the Children were living with [J.S.] at that time[,] according to a custody complaint filed in regard to [J.S.]'s daughter and as set forth below in further detail.

[J.S.] was fined $150, to be paid directly to the Northampton County District Attorney's Domestic Violence Unit.

On October 14, 2016, Father filed a Petition for Contempt of the Interim Orders of Court entered July 8, 2016 and April 20, 2016. On November 28, 2016, both parties were ordered to comply with [the orders of] April 20, 2016 and July 8, 2016 including the provision to comply with [the] requirement to participate in co-parenting family counseling with Ronald J. Esteve, Ph.D. The November 28, 2016 Order specifically provided that the matter was to be transferred to Lehigh County, however[,] from November 2016 until September 14, 2017[,] the case sat in Northampton County.

Trial Ct. Op. 10/19/18, at 3-8 (citations to the record omitted).

Thereafter, in September 2017, the instant litigation commenced in Lehigh County. Mother and Father each filed a petition for modification of custody and for contempt on September 14, 2017, and September 29, 2017, respectively. The trial court conducted a custody trial on March 26, 2018, March 27, 2018, May 22, 2018, June 29, 2018, and September 25, 2018. Additionally, the court interviewed the Children, *in camera*, on July 3, 2018.[2]

At trial, Mother and Father were present and represented by counsel. Mother and Father each testified on their own behalf. Additionally, Mother presented the testimony of: (1) Father as of cross-examination; (2) Mother's sister, maternal aunt, M.W.G.; and (3) Mother's aunt, maternal great-aunt, D.M. Father presented the testimony of: (1) five South Whitehall Township

_____

[2] Counsel for both Mother and Father were present when the trial court questioned the Children. N.T., 7/3/18, at 3.

police officers;[3] (2) Father's neighbor, R.U.; (3) the mother of J.S.'s child, C.S., who was living with Mother and J.S.; (4) Father's sister, J.O.; (5) Father's mother, paternal grandmother, K.M.; and (6) Father's significant other, N.S.

At the September 25, 2018 hearing, the trial court suggested that it was in favor of maintaining primary physical custody of Children with Mother. N.T., 9/25/18, at 29. However, the court stated:

> You know, I can't fix you as parents. You are who you are. Neither of you are perfect parents and have some issues you need to work on. But given the stability, even though it leaves much to be desired, that the kids have in mom's care, for now the kids will stay in [Mother]'s primary care during the school year.
>
> But I'll caution [Mother]. You know, I don't find her testimony credible. I think you outright lie for the sake of covering your own butt and will engage in having the children lie to cover your circumstances. And that's just -- you [] know, that's just kind of sick because that's what you're teaching kids to do. You're not being a good parent if you're engaging in that kind of behavior. Maybe it was the result of being involved in [J.S.] and caught up in all that domestic violence.

*Id.* at 29-30.

Subsequently, by order dated October 18, 2018, and entered October 19, 2018,[4] the trial court denied Mother's petition for modification and granted

---

[3] These officers testified regarding numerous incidents between Mother and J.S. between December 2016 and February 2018. *See* N.T., 3/26/18, at 110-159; *see also* Father's Exs. 1-8.

[4] The subject order was dated October 18, 2018. However, the clerk did not provide notice pursuant to Pa.R.C.P. 236(b) until October 19, 2018. Our

Father's petition for modification. The court awarded the parties shared legal custody, Father primary physical custody, and Mother partial physical custody of the Children.[5] Specifically, Mother was to maintain primary physical custody and Father partial physical custody until December 31, 2018. ***See*** Final Custody Order, 10/19/18, at ¶¶ 2, 3(a). Effective December 31, 2018 at 6:00 p.m., Mother was granted partial physical custody of the Children on the first three out of four weekends in a repeating four-week cycle from Friday at 6:00 p.m. until Sunday at 6:00 p.m. ***Id.*** at ¶ 3(b)(i). Father was to transport the Children to maternal grandparents' home in Allentown on Friday and Mother was to transport the Children to Father's home in Birdsboro on Sunday. ***Id.*** The parties were to exercise shared physical custody with a week on–week off schedule during the summer. ***Id.*** at ¶ 3(b)(ii).

The trial court additionally provided for, among other things, a holiday schedule, vacations, and reasonable phone, text, Facetime or Skype access at reasonable times. ***Id.*** at ¶¶ 4, 5, 14. The court issued a memorandum opinion

---

appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999).

[5] The court additionally granted each party's Petition for Contempt. Mother does not address the issue of contempt in her appeal.

accompanying its order setting forth the reasons for its decision. **See** Trial Ct. Op., 10/19/18.

On November 15, 2018,[6] Mother, through counsel, filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[7] Thereafter, the trial court issued a Rule 1925(a) opinion dated and entered December 14, 2018. **See** Trial Ct. Op., 12/14/18.

On appeal, Mother raises the following issues for our review:

[1.] Did the [trial c]ourt commit an abuse of discretion in awarding primary custody to Father when the weight of the competent evidence established that Mother is the better parent?

[2.] Did the [trial c]ourt commit an error of law in failing to properly consider the custody factors in its award of primary custody to Father[?]

[3.] Did the [trial c]ourt commit an abuse of discretion in inferring solely from Mother's difficulties with an abusive past boyfriend that the best interests of the children would be served by an award of primary custody to Father[?]

---

[6] Mother additionally filed an application for reconsideration and stay on November 15, 2018, which the trial court denied by order dated December 3, 2018, and entered December 6, 2018. **See** Order, 12/6/18. Mother subsequently filed an application for stay with this Court on December 18, 2018. That application was denied on December 28, 2018. **See** Order, 12/28/18.

[7] Pursuant to order dated December 4, 2018, this Court noted that Mother failed to order and pay for the pertinent trial court transcripts as required by Pa.R.A.P. 1911 and the Lehigh County Local Rules. This Court ordered Mother order and pay for the transcripts by December 14, 2018 and further directed to file a receipt demonstrating payment. **See** Order, 12/4/18.

Mother's Brief at 5.[8]

We summarize all of Mother's issues on appeal. Mother first alleges that the trial court abused its discretion in granting Father primary physical custody as the weight of the evidence supported an award of primary physical custody to Mother. Mother states:

> The [trial c]ourt fails to reconcile its decision with its earlier comments regarding Mother being the better parent isolated from the interaction with Father nor does the [trial c]ourt reconcile its earlier statements of concern regarding Father's lack of involvement in the school and medical areas of the lives of the [C]hildren from the beginning.
>
> It is Mother's position that the [trial c]ourt's multiple statements about Mother's superior parenting and Father's disturbing lack of involvement in either their schooling or medical issues represent the correct decision in regards to the best interests of the children. The [trial c]ourt's reversal of its own assessments over the course of the trial represents an abuse of discretion. The overwhelming weight of the evidence favors an award of primary custody to Mother.

---

[8] We observe that Mother states the issues somewhat differently than in her Rule 1925(b) statement. We, nevertheless, find that she has preserved her challenges to the trial court's custody order. Moreover, Mother raises several additional issues in her Rule 1925(b) statement not addressed in her statement of questions involved and her brief. As such, Mother failed to preserve and waives any claims as to these additional issues. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); *see also In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Mother's Brief at 55-56.

Mother also asserts error in the trial court's consideration of the custody factors. Mother contends that the court did not specifically analyze each factor separately and failed to properly weigh the factors. She maintains that the trial court failed to examine and weigh each custody factor and merely addressed the factors by footnote. *Id.* at 58-60. Mother argues:

> The [trial c]ourt's failure to expressly state how each specific factor weighed in favor of either party was in error as it deprives the reviewing court of a basis upon which to analyze whether its deductions or inferences are supported in the record. [*C.A.J. v D.S.M.*], [ ] 136 A.3d 504 (Pa. Super 2016).

*Id.* at 58-59. Mother continues:

> With respect to all but the custody factor related to present or past abuse the [trial c]ourt fails to engage in the in depth analysis required by law. Individual factors are not weighed as much as they are referenced by footnote.
>
> It is Mother's position that the [trial c]ourt's failure to properly weigh the custody factors should result, at minimum, in the remand of this matter for a full explanation of its analysis of the custody factors.

*Id.* at 60.

Lastly, Mother contends that the trial court abused its discretion in finding it was in the Children's best interests to award Father primary physical custody due to her abusive relationship with J.S. *Id.* at 61-64. She asserts that the court improperly focused on her relationship with J.S. and instead highlights that there was no evidence of any harm to the Children. *Id.* at 62-64. Mother states:

- 10 -

The determination that Mother was not truthful in explaining [] the circumstances regarding her relationship with J.S. might be attributable to the fact that she was, again, a victim of violence but even if this Honorable Court accepts the [trial c]ourt's decision to believe that she was simply being untruthful this finding should not be the basis of a custody determination when all of the remaining factors lean towards Mother and there is not been one piece of evidence of harm to the [C]hildren. The weight of the evidence is that the children were not exposed to J.S. nor was there even the allegation that he had ever harmed the [C]hildren.

*Id.* at 62-63. She further argues:

It is the [trial c]ourt's obligation to assess the circumstances of the parties at the time of its decision[,] not at some time in the past. . .[,] especially when . . . the parent was a victim of abuse. The phrase "whether there is a continued risk of harm" is a key component of the analysis required for this custody factor. This qualifying phrase is of greater significance herein where the abuse that is being referenced is abuse by a third-party towards a parent. Mother has a protection from abuse order in effect against both of her past abusers and there is no evidence of any harm to the [C]hildren at any time in these proceedings.

*Id.* at 63-64.

In custody cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

- 11 -

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); ***see***

***also E.R. v. J.N.B.***, 129 A.3d 521, 527 (Pa. Super. 2015).

This Court has consistently held that

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned.  Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting ***Jackson***

***v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).  In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order.  An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused.  An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations

omitted).

The paramount concern in any custody case decided under the Act is

the best interests of the child.  ***See*** 23 Pa.C.S. §§ 5328, 5338.  Section

5328(a) sets forth the best interest factors that the trial court must consider

in making a custody determination.  ***See E.D. v. M.P.***, 33 A.3d 73, 79-80 &

n.2 (Pa. Super. 2011).  Specifically, Section 5328(a) of the Act provides:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Further, with regard to the Act, we have stated:

"**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. **Id.**

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013) . . . . A court's explanation of reasons for its decision, which adequately

addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (emphasis in original).

As we stated in *M.J.M.*:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. *See A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

*M.J.M.,* 63 A.3d at 339 (emphasis added).

A trial court may consider a parent's role in caring for a child in light of the statutory factors. However, "the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable."[9] *Id.*

Instantly, in its opinion accompanying its order, the trial court analyzed the Children's best interests as follows. *See* Trial Ct. Op., 10/19/18, at 12-

_____

[9] As explained by the *M.J.M.* Court, the "primary caretaker doctrine," was a judicially created doctrine that held that "where two natural parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker." *M.J.M.*, 63 A.3d at 337 (citations and emphasis omitted). Therefore, the role of a parent as a primary caretaker "was intended to be an additional consideration that would tip the scales in favor of the primary caretaker in a situation where the trial court deemed both parents to be fit to act as a primary custodian." *Id.* at 338.

24. First, addressing credibility and Mother's abusive relationship with J.S., the court stated:

> Credibility of witnesses, in particular for Mother, is an important issue in the analysis of the factors. The [c]ourt found Mother lacked credibility and accountability, especially in her testimony regarding contact with [J.S.]. . . .
>
> By her own admission . . ., Mother resided with, had contact with, continued in a relationship with and exposed the Children to [J.S.] after she was specifically ordered not to. In her pending September 2017 Petition for Modification, she told the court that she would like her children to be able to have contact with [J.S.]. It was only in October 2017, a year and one half since her alleged assault, that she withdrew that request before the Conference Hearing Officer. Throughout this trial and in the related pleadings, Mother lied about her contact with [J.S.] and lied about not residing with him at the Walbert Avenue address. She engaged the Children as well as her parents in this lie, and withheld the truth from Father by not communicating with him. Mother has alleged that she needed to protect the Children from Father, a shield she created to hide behind; at the same time she has attempted to use this 'shield' as a sword against Father. There were times when Mother refused to communicate with Father; and there was no basis [for] not communicating. She subjected the Children to domestic chaos involving the police as set forth below. With this background, the [c]ourt examines each statutory factor for awarding custody giving weighted consideration to those factors which affect the safety of the children.

Trial Ct. Op., 10/19/18, at 10-11. The court then offered a twelve-page discussion of the custody factors.

Although the trial court did not identify and address each custody factor separately, the court offered a thorough discussion of the facts of the instant matter and each of the custody factors. For example, the court reasoned:

> The [c]ourt is mindful that there is a fundamental need for stability and continuity in the Children's education, family life and

- 16 -

community life. Mother has performed the lion share of the parental duties for the Children. Although prior to separation, Mother and Father shared parenting responsibilities, Mother currently schedules and transports the Children to their school and medical appointments. [A.M.] has special needs and sees an endocrinologist at Children's Hospital of [Philadelphia] since 2013. Since separation Mother has attended to their daily needs. She has attended to their educational and medical needs. However, she has also repeatedly demonstrated her willingness to poison the Children against their Father in an attempt to cover her own bad acts. She does so at the sacrifice of the mental health of the Children and their relationship with their Father. Even during the pendency of the trial, Mother has continued contact with [J.S.] who has open criminal charges. Given the distance and Father's work schedule, he has been limited in his involvement. When Father initiated this custody action, he became aware that [A.M.] had missed thirty-three days of school and was late twenty-seven days of school. He transferred the Child from Lehigh Valley Academy to Owatin Creek Elementary School located near his residence. Northampton County ordered the Child to return to Kratzer where . . . both Children attend school. He has demonstrated . . . his willingness and his ability to provide care for the Children as the primary custodian during the school year. Similar to Mother's circumstances, he has child care available within his extended family near to his home.

*Id.* at 23-24 (footnotes omitted).

Additionally, in its Rule 1925(a) opinion, the trial court further explained:

Throughout the record, this [c]ourt referenced the positive and negative attributes of both Mother and Father's parenting abilities. During trial on September 25, 2018, this [c]ourt indicated that primary custody of the Children would remain with Mother during the school year. The [c]ourt explained that even though Mother lacked credibility and exercised poor judgment, she did provide some level of stability for the Children. However, at the conclusion of the proceedings on September 25, 2018, this [c]ourt reminded the parties that the standard in custody cases is the best interests of the children and stated that this [c]ourt would enter an order "based on the analysis of the factors and on the open petitions for modification and contempt."

Following trial, this [c]ourt reviewed the testimony from the case, which spanned five days over six months, and thoroughly examined the exhibits presented by Mother and Father. Thereafter, this [c]ourt analyzed the custody factors listed in 23 Pa.C.S. § 5328(a) and reconsidered the decision made on the record on September 25, 2018. This [c]ourt's reconsideration of the evidence is consistent with the closing statements made on September 25, 2018 because this [c]ourt believes it is in the best interests of the Children for Father to have primary physical custody. As explained in this [c]ourt's October 18, 2018 Memorandum Opinion, Mother, without good reason, has engaged in a course of conduct to put her own needs and desires before the Children and to alienate the Children from Father. Mother has been manipulative and deceitful with respect to her relationship with [J.S.]. The Children have been exposed to a long history of domestic disturbances and police investigations while in Mother's care. Moreover, Mother has manipulated the Children and instructed them not to speak about the circumstances in her home.

\* \* \*

This [c]ourt did not lightly reverse the decision made from the bench. However, following the conclusion of trial, due consideration was given to all of the testimony and exhibits presented, and this [c]ourt determined that it is in the best interests of the Children for Father to have primary physical custody of the Children.

Trial Ct. Op., 12/14/18, at 5-7.

Therefore, contrary to Mother's assertion, the trial court did not abuse its discretion by reconsidering its earlier suggestion that Mother should maintain primary custody of Children in light of Section 5328(a). Furthermore, the trial court did not commit reversible error by failing to enumerate all of the Section 5328(a) factors in its decision. Rather, the court's opinions reflect an appropriate consideration of all of the statutory factors when determining the best interest of the Children.

Mother's remaining issues, at their core, dispute the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Mother, in essence, questions the trial court's conclusions and assessments and seeks this court to re-find facts, re-weigh evidence, and/or re-assess credibility to her view of the evidence. This we cannot do. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. As we stated in *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005), "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)).

Further, to the extent Mother challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. *See M.J.M.*, 63 A.3d at 339. Moreover, any challenge to the nature and detail of the court's analysis of the factors is unfounded. *See A.V.*, 87 A.3d at 822-23.

In sum, our review compels the conclusion that the trial court reasonably analyzed and addressed each factor under Section 5328(a) and there is support in the record for its findings and determinations regarding the best interest of the Children. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. As such, Mother's claims do not warrant relief.

Order affirmed.  Petition to submit case on brief dismissed as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8/19